**No. 24-1290**

# United States Court of Appeals for the Federal Circuit

**PICTOMETRY INTERNATIONAL CORPORATION,**

***Appellant,***

***v.***

**NEARMAP US, INC.,**

***Appellee.***

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE, PATENT TRIAL AND APPEAL BOARD IN NO. IPR2022-00733

## APPELLEE NEARMAP US, INC.'S RESPONSE BRIEF

Lauren A. Degnan
Christopher Dryer
W. Karl Renner
Benjamin J. Christoff
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

J. Steven Baughman
Megan F. Raymond
GROOMBRIDGE, WU, BAUGHMAN & STONE LLP
801 17th Street, N.W.
Suite 1050
Washington, DC 20006

Michael F. Milea
GROOMBRIDGE, WU, BAUGHMAN & STONE LLP
565 Fifth Avenue
Suite 2900
New York, NY 10017

July 29, 2024

*Attorneys for Appellee Nearmap US, Inc.*

# EXEMPLAR CLAIM AT ISSUE ON APPEAL

**Claims 1, 3, 14, and 16 of U.S. Patent No. 8,542,880 (Appx48-49)**

1. A process for determining attributes of a roof structure of a real-world three-dimensional building, comprising the acts of:

providing at least one computer input field for a user to input first location data generally corresponding to the location of the building;

providing visual access to an aerial image of a region including the roof structure of the building corresponding to said first location data, the aerial image taken from a straight down overhead view with respect to the roof structure;

on the aerial image of the region, providing a visual marker that is moveable on a computer monitor around said region, said visual marker initially corresponding to said first location data, wherein said visual marker may be moved to a final location on top of the building to more precisely identify the location of the building roof structure, the final location having location coordinates;

providing a computer input capable of signaling user-acceptance of the final location of said marker; and,

providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location.

2. The process of claim 1 and wherein said first location data comprised street address data, and wherein said location coordinates of said final location are translated to latitude and longitude coordinates.

3. The process of claim 2 and wherein said image corresponding to the first location data is from a first imagery database from which said final location is selected and is internet-based imagery having a corresponding street address look up field, and wherein the aerial imagery database is a second imagery database, and further comprising the act of:

using said latitude and longitude coordinates to access imagery from the second imagery database.

14. A non-transient computer memory storing computer logic, that when executed by computer hardware causes the computer hardware to determine attributes of a roof structure of a real-world three-dimensional building by:

providing at least one computer input field for a user to input first location data generally corresponding to the location of the building;

providing visual access to an aerial image of a region including the roof structure of the building corresponding to said first location data, the aerial image taken from a straight down overhead view with respect to the roof structure;

on the aerial image of the region, providing a visual marker that is moveable on a computer monitor around said region, said visual marker initially corresponding to said first location data, wherein said visual marker may be moved to a final location on top of the building to more precisely identify the location of the building roof structure, the final location having location coordinates;

providing a computer input capable of signaling user-acceptance of the final location of said marker; and,

providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location.

15. The non-transient computer memory of claim 14, wherein said first location data comprised street address data, and wherein said location coordinates of said final location are translated to latitude and longitude coordinates.

16. The non-transient computer memory of claim 15, wherein said aerial image corresponding to the first location data is from a first imagery database from which said final location is selected and is internet-based imagery having a corresponding street address look up field, and wherein the aerial imagery database is a second imagery database, and wherein said computer logic when executed by computer hardware causes the computer hardware to:

use said latitude and longitude coordinates to access imagery from the second imagery database.

# CERTIFICATE OF INTEREST

Counsel for Appellee Nearmap US, Inc. ("Nearmap") certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case.

   **Nearmap US, Inc.**

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   **Nearmap US, Inc.**

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

   **Atlas US Finco, Inc.**

4. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

   **Fish & Richardson P.C.: Craig A. Deutsch, Daniel D. Smith, Patrick A. Darno, Patrick J. Bisenius, Thomas A. Rozylowicz, W. Ryan Klima, Yao Wang**

5. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

   **Yes (*see* Nearmap's Corrected Notice of Related Case Information filed at Dkt. 15)**

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

   **None/Not Applicable**

Dated: July 29, 2024

*<u>/s/ Lauren A. Degnan</u>*
Lauren A. Degnan

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..... i

TABLE OF AUTHORITIES ..... v

STATEMENT OF RELATED CASES ..... 1

COUNTER-STATEMENT OF THE ISSUES ..... 2

INTRODUCTION ..... 3

COUNTER-STATEMENT OF THE CASE ..... 4

I. The ’880 Patent ..... 4

A. Overview ..... 4

B. The ’880 Patent Does Not Purport To Disclose New Technology for Accessing or Displaying Images or Databases ..... 6

C. Illustrative Claim ..... 7

II. Nearmap’s Petition Establishes That the Asserted Prior Art Renders the Claimed Improvement Obvious ..... 8

A. Nearmap’s Petition Shows the Obviousness of the Claimed Improvement ..... 8

1. Kennedy Discloses Accessing and Displaying Straight-Down and Oblique Aerial Images from Databases for Roof Analysis ..... 9

2. Florance Discloses Allowing a User To Reposition a Marker on Aerial Imagery To Identify a Building’s Location More Precisely ..... 13

3. Kreft Discloses Confirming User Updates to a Building’s Location on a Map ..... 14

4. A Skilled Artisan Would Have Been Motivated To Combine Kennedy, Florance, and Kreft ..... 15

B. Pictometry Disputed the Motivation To Combine and Claim Construction....17

C. Nearmap Responded to Pictometry's Arguments on Motivation To Combine and Claim Construction....18

D. The Board Correctly Found the '880 Patent Claims Unpatentable....21

SUMMARY OF THE ARGUMENT .... 24

ARGUMENT .... 26

I. Standard of Review....26

II. The Court Correctly Found That Nearmap Proved That Independent Claims 1 and 14 Would Have Been Obvious....27

A. The Board's Adequately Explained Its Motivation-To-Combine ....27

B. Substantial Evidence Supports the Board's Findings Establishing Obviousness Even Under Pictometry's Construction ....34

C. The Board Correctly Rejected Pictometry's Narrow Construction ....39

1. The Claim Language Does Not Require Multiple Image Retrieval Steps .... 39

a. Limitation [1.5] / [14.5] Does Not Require Separately Accessing a Database To Retrieve an Image.... 39

b. Pictometry's Ordinality Argument Is Immaterial.... 42

2. The Specification Does Not Support Pictometry's Narrow Construction.... 44

3. The Prosecution History Does Not Support Pictometry's Narrow Construction .... 45

4. The Board Properly Found the Claims Unpatentable Under the Correct Construction .......................... 46

D. The Board's Typographical Error in Referring to Claim 16 Rather Than 14 in One Instance Is Not Reversible Error ..................................................................................46

III. The Board Adequately Explained Its Decision Regarding Dependent Claims 3 and 16 and the Court Should Affirm It ........................50

CONCLUSION ........................................................................................ 53

CERTIFICATE OF SERVICE AND FILING ...................................................... 55

CERTIFICATE OF COMPLIANCE ..................................................................... 56

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alacritech, Inc. v. Intel Corp.*,
966 F.3d 1367 (Fed. Cir. 2020) ....................................................................33

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016) ....................................................................23

*In re Applied Materials, Inc.*,
692 F.3d 1289 (Fed. Cir. 2012) ....................................................................49

*Bot M8 LLC v. Sony Interactive Entertainment LLC*,
66 F.4th 1380 (Fed. Cir. 2023) .....................................................................37

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
419 U.S. 281 (1974)........................................................................................27

*ClassCo, Inc. v. Apple, Inc.*,
838 F.3d 1214 (Fed. Cir. 2016) ....................................................................38

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018) ....................................................................40

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023) .......................................................................49

*Cutsforth, Inc. v. MotivePower, Inc.*,
636 F. App'x 575 (Fed. Cir. 2016) ...............................................................32

*Dealertrack, Inc. v. Huber*,
674 F.3d 1315 (Fed. Cir. 2012) ....................................................................44

*Elekta Ltd. v. ZAP Surgical Sys., Inc.*,
81 F.4th 1368 (Fed. Cir. 2023) .....................................................................32

*Enovsys LLC v. Nextel Commc'ns, Inc.*,
614 F.3d 1333 (Fed. Cir. 2010) ....................................................................42

*Facebook, Inc. v. Windy City Innovations, LLC*,
973 F.3d 1321 (Fed. Cir. 2020) ....................................................................38

*Fleming v. Cirrus Design Corp.*,
28 F.4th 1214 (Fed. Cir. 2022) ....................................................................36, 37

*In re Google Tech. Holdings LLC*,
980 F.3d 858 (Fed. Cir. 2020) ......................................................................41, 42

*GUI Glob. Prod., Ltd. v. Samsung Elecs. Co.*,
No. 2022-2156, 2024 WL 1564694 (Fed. Cir. Apr. 11, 2024)......................29, 30

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ..........................................................................44

*In re Killian*,
45 F.4th 1373 (Fed. Cir. 2022) ..........................................................................52

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)..................................................................................*passim*

*Laitram Corp. v. NEC Corp.*,
163 F.3d 1342 (Fed. Cir. 1998) ..........................................................................44

*Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*,
70 F.4th 1331 (Fed. Cir. 2023) .....................................................................*passim*

*Merck & Cie v. Gnosis S.P.A.*,
808 F.3d 829 (Fed. Cir. 2015) ............................................................................32

*Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*,
878 F.3d 1336 (Fed. Cir. 2018) ..........................................................................26

*In re Nuvasive, Inc.*,
842 F.3d 1376 (Fed. Cir. 2016) ..........................................................................33

*Omega Eng'g, Inc, v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ..........................................................................45

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*,
520 F.3d 1358 (Fed. Cir. 2008) ..........................................................................41

*Outdry Techs. Corp. v. Geox S.p.A.*,
859 F.3d 1364 (Fed. Cir. 2017) ...................................................................26, 28

*Pers. Web Techs., LLC v. Apple, Inc.*,
848 F.3d 987 (Fed. Cir. 2017) ....................................................................33

*PGS Geophysical AS v. Iancu*,
891 F.3d 1354 (Fed. Cir. 2018) .............................................................29, 30

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ..................................................................40

*Power Integrations, Inc. v. Lee*,
797 F.3d 1318 (Fed. Cir. 2015) ..................................................................33

*Pride Mobility Prod. Corp. v. Permobil, Inc.*,
818 F.3d 1307 (Fed. Cir. 2016) ..................................................................26

*Raytheon Co. v. Roper Corp.*,
724 F.2d 951 (Fed. Cir. 1983) ....................................................................44

*In re Sang Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ..................................................................32

*Seabed Geosolutions (US) Inc. v. Magseis FF LLC*,
8 F.4th 1285 (Fed. Cir. 2021) .....................................................................27

*Shoes by Firebug LLC v. Stride Rite Children's Grp.*,
962 F.3d 1362 (Fed. Cir. 2020) ..................................................................50

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
81 F.4th 1231 (Fed. Cir. 2023) .............................................................39, 40

*Specialty Composites v. Cabot Corp.*,
845 F.2d 981 (Fed. Cir. 1988) ....................................................................44

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012) .............................................................40, 45

*TQ Delta, LLC v. CISCO Sys., Inc.*,
942 F.3d 1352 (Fed. Cir. 2019) ..................................................................32

*In re Universal Elecs., Inc.*,
No. 22-1716, slip op. (Fed. Cir. Aug. 15, 2023)............................................36

*Unwired Planet, LLC v. Google Inc.*,
841 F.3d 1376 (Fed. Cir. 2016) ..........26

*In re Warsaw Orthopedic, Inc.*,
832 F.3d 1327 (Fed. Cir. 2016) ..........27

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ..........49

*Yeda Rsch. v. Mylan Pharms. Inc.*,
906 F.3d 1031 (Fed. Cir. 2018) ..........29

*ZUP, LLC v. Nash Mfg., Inc.*,
896 F.3d 1365 (Fed. Cir. 2018) ..........38

**Statutes**

5 U.S.C. § 706 ..........26, 49

**STATEMENT OF RELATED CASES**

The ’880 patent (U.S. Patent No. 8,542,880) at issue in this appeal is asserted in *Eagle View Technologies, Inc., et al. v. Nearmap US, Inc., et al.*, 2:21-cv-00283-TS-DAO (D. Utah) and *Eagle View Technologies, Inc., et al. v. GAF Materials LLC*, 2:22-cv-00215-TS-DAO (D. Utah).

## COUNTER-STATEMENT OF THE ISSUES

1. Did the Board adequately explain its factual findings that a skilled artisan would have been motivated to combine Kennedy's and Florance's teachings in a manner that renders the challenged claims obvious, where it credited Nearmap's arguments, explicitly cited supporting record evidence, and explained its reasons for rejecting Pictometry's contrary arguments, none of which Pictometry carries forward on appeal?

2. Does substantial evidence support the Board's factual finding that the Kennedy-Florance-Kreft combination renders limitation [1.5] / [14.5] ("providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location") obvious to a skilled artisan under either party's proposed construction?

3. Whether the Board correctly construed limitation [1.5] / [14.5] ("providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location") as its plain and ordinary meaning, which does not require a second image-retrieval step?

## INTRODUCTION

The Court should affirm the Board's obviousness decision. The Board's decision is adequate under the APA. Given the simplicity of the issues and Nearmap's straightforward obviousness theory, the Board's succinct analysis (which is also more than a "single sentence") is sufficient to enable this Court's review.

Moreover, substantial evidence supports the Board's explicit finding that a skilled artisan would have combined the prior art in a manner that satisfies even Pictometry's narrow construction. Pictometry's arguments to the contrary attack only one reference in isolation. These arguments were rejected by the Board and are contrary to the flexible obviousness inquiry *KSR* demands.

Given the Board's factual findings under Pictometry's own construction, this Court need not reach Pictometry's claim construction arguments. However, those arguments are without merit in any event. Contrary to this Court's claim construction principles, Pictometry seeks to read into its independent claims a requirement of a second image-retrieval step, even though those claims contain no such requirement as written, and certain dependent claims do.

Pictometry also seizes on a single typographical error in the Board's decision to allege the Board's substantive findings are somehow inconsistent. But what the Board meant to say is clear, especially when read in the context of its

decision as a whole, and the Board's misstatement has no effect on its dispositive factual findings. Thus, this clerical error is no basis to disturb the Board's decision.

Lastly, the Board's determination that claims 3 and 16 would have been obvious is adequate under the APA and is supported by substantial evidence. Pictometry argued before the Board that Kennedy failed to disclose a "second, later image retrieval step." Because the Board had already found that the asserted combination renders such a step obvious when addressing claims 1 and 14, the Board reasonably referred to its earlier analysis when addressing claims 3 and 16.

## COUNTER-STATEMENT OF THE CASE

### I. The '880 Patent

#### A. Overview

The '880 patent is titled "System and Process for Roof Measurement Using Aerial Imagery." Appx20. It generally relates to a mapping system "for determining attributes of a roof structure . . . of a real-world three-dimensional building" using a region's "aerial imagery . . . including the roof structure." Appx44 (5:30-35); *see also* Appx20 (Abstract); Appx48 (13:53-54, 14:49-52). These aerial images can be either "straight down" or "oblique." Appx47 (11:9-14); *see also* Appx28-30 (showing oblique images Figs. 5A-5C). The '880 patent admits that using aerial imagery to estimate characteristics of roofs "ha[d] been done for many years" before the purported invention, Appx42 (1:19-26), but it

purports to improve upon such systems. Most pertinent to this appeal, the patent describes providing a visual marker that a user can move "to more precisely identify the location of the building roof structure." Appx42 (1:45-53).

Specifically, the patent states that a user can enter an address into an internet-based interface. Appx46 (9:53-59); Appx24 (Fig. 4A). In response, the computer screen shows an image with a "region including building 500 with its roof structure 501." Appx46 (9:60-62).




***Fig. 4B***

Appx25 (Fig. 4B). Marker 106a "correspond[s] to the street address" the user entered, but may not "perfectly correspond to roof structure 501." Appx46 (10:2-

6). Thus, the user can "move the marker . . . to a final location 106b," i.e., the "top of the building 500," as Figure 4C shows below. Appx46 (10:6-10).




***Fig. 4C***

Appx26 (Fig. 4C). Once a user confirms the marker's final location, the system may display a screen showing more information about the marked location, including latitude and longitude. Appx46 (10:15-53); *see* Appx27 (Fig. 4D).

### B. The '880 Patent Does Not Purport To Disclose New Technology for Accessing or Displaying Images or Databases

Although Pictometry now seeks to distinguish the prior art based on its construction of limitation [1.5] (relating to "visual access"), the '880 patent does not purport to disclose any new or specific technology for accessing images or

databases. Instead, the specification's references to "accessing" an image "database" and "displaying" images rely on a skilled artisan's background knowledge of how to implement these basic computer functions.

The '880 patent treats "accessing" imagery as routine, and does not provide for any specific technical implementation, but rather describes simply accessing Google® Earth over the Internet as a "popular example." Appx43 (3:43-45); *see also* Appx20. The patent's discussion of Figures 4A-4D discloses an "optional" "example" where a user accesses imagery from a cheaper, lower-resolution source using a street address and higher-resolution imagery from a second source using latitude and longitude. *See* Appx42 (1:66-2:7); Appx46 (9:50-54); Appx46-47 (10:47-11:7). The specification states that "[s]uch imagery may come from a variety of places." Appx46 (9:64-67). Apart from describing these exemplary sources as "database[s]" and generally referring to the Internet, the specification does not describe any particular technology for accessing them. *See generally* Appx46-47. The '880 patent's passing mentions of "displaying" images or markers likewise treat the function as well within a skilled artisan's knowledge. *See* Appx42 (2:27-28); Appx44 (5:9-12).

### C. Illustrative Claim

Claim 1 of the '880 patent is illustrative and reproduced below:

> [1.0] A process for determining attributes of a roof structure of a real-world three-dimensional building, comprising the acts of:

> [1.1] providing at least one computer input field for a user to input first location data generally corresponding to the location of the building;
>
> [1.2] providing visual access to an aerial image of a region including the roof structure of the building corresponding to said first location data, the aerial image taken from a straight down overhead view with respect to the roof structure;
>
> [1.3] on the aerial image of the region, providing a visual marker that is moveable on a computer monitor around said region, said visual marker initially corresponding to said first location data, wherein said visual marker may be moved to a final location on top of the building to more precisely identify the location of the building roof structure, the final location having location coordinates;
>
> [1.4] providing a computer input capable of signaling user-acceptance of the final location of said marker; and,
>
> [1.5] providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location.

Appx48 (13:53-14:9). Neither party has identified any pertinent difference in the corresponding limitations of claim 14 ([14.2] and [14.5]) that is relevant to this appeal.

## II. Nearmap's Petition Establishes That the Asserted Prior Art Renders the Claimed Improvement Obvious

### A. Nearmap's Petition Shows the Obviousness of the Claimed Improvement

Nearmap petitioned for IPR, arguing that Kennedy (Appx932-966), Florance (Appx967-1163), and Kreft (Appx1164-1207) render the '880 patent's claims

obvious.[1] Appx76-85; Appx4. Nearmap explained that: (1) Kennedy describes a mapping system that uses straight-down and oblique aerial images to analyze roof measurements; (2) Florance discloses a similar mapping system that permits users to drag an icon to update a building's location and calculate new GPS coordinates; and (3) Kreft discloses yet another system for updating a building's location on a map, confirming its accuracy, and updating corresponding database information. *See* Appx76-78; Appx6-8.

#### 1. Kennedy Discloses Accessing and Displaying Straight-Down and Oblique Aerial Images from Databases for Roof Analysis

Kennedy discloses an Internet-based system that "determines the measurements of a roof." Appx932 (Abstract); Appx955 (5:37-50); Appx6. Kennedy's user interface allows a user to input an address. Appx955 (5:37-45).

[1] Nearmap presented additional obviousness grounds based on Keane, but the Board did not reach them. *See* Appx4; Appx18; Appx62.

FIG.3




Appx935 (Fig. 3). "In response to receiving . . . location information" such as an address, Kennedy "retrieves an image of the location from a source of images such as [a] geophysical database," Appx955 (5:46-50), including from "Microsoft, Google [Earth], or any of a number of other commercially available databases." Appx965 (25:27-31); *see also* Appx955 (5:1-18, 5:26-50, 5:59-62, 6:24-67); Appx957 (9:39-50); Appx965 (26:16-36). In retrieving these images, Kennedy uses a "[g]eo coding" process linking latitude and longitude to street address information. Appx955 (5:59-62, 6:32-45).

The retrieved images can be straight-down aerial images generated "by satellite or aerial photography," as Figure 35 shows:

FIG. 35




Appx949 (Fig. 35); Appx7; *see also* Appx954 (3:41-43); Appx955 (6:56-67). The images can also depict a "perspective" or "oblique" view of the roof, as Figure 36 shows:



FIG. 36

Appx950 (Fig. 36); *see also* Appx954 (3:46-47); Appx955 (6:56-67); Appx965 (25:63-65, 26:36-48); Appx951 (Fig. 37); Appx7.

Kennedy describes using the straight-down and oblique images together "to obtain roof pitch information," Appx965 (26:37-46), as well as generating an outline of the pictured roof's structure to ascertain its measurements, Appx955 (5:51-58, 6:8-20); Appx957 (10:53-11:6); Appx965 (26:41-48). For example, Kennedy discloses a "line tool" a user can "drag[] . . . along an image of a ridge" for the purpose of determining the roof's orientation and dimensions. Appx959 (14:8-14); Appx937 (Fig. 6).

### 2. Florance Discloses Allowing a User To Reposition a Marker on Aerial Imagery To Identify a Building's Location More Precisely

Florance discloses another Internet-based mapping system that "can display an aerial image, overlay map features onto the aerial image, and provide access to information concerning objects appearing in the aerial image." Appx1155 (¶ 572); *see also* Appx1155 (¶ 573). Florance overlays map features (*e.g.*, lines representing streets) onto an aerial image. Appx1155 (¶ 573). It also provides information about "properties (e.g., buildings or land)" visible in the aerial images using "icons (e.g., dots) placed over the . . . objects appearing in the aerial image." Appx1155 (¶ 573); *see also* Appx1155-1156 (¶ 596); Appx1107 (Fig. 135).

Florance discloses allowing a user to "determine[] a more accurate position for [an] icon, and move[] the icon (e.g., by clicking and dragging) to that more accurate position." Appx1158 (¶ 264); *see also* Appx1107 (Fig. 135); Appx8. In particular, a user can move an icon so that it corresponds precisely to a building:

> Often, the preliminary icon position derived from the street address is positioned apart from the actual image of the property, for example, on or near the street that the property fronts. A more accurate position of the icon would therefore be in the center of the property or the center of the building on the property, for example.

Appx1158 (¶ 624).

Once the icon is re-positioned, Florance calculates GPS coordinates for the icon and hence the building. Appx1107 (Fig. 135); *see also* Appx1157-1158

(¶¶ 618-627). Florance teaches that allowing a user to thus update an icon's location "enables more accurate searching" and "ensures that a geographically-based search . . . encompasses only the appropriate properties within the defined geographic area." Appx1158 (¶ 627); *see also* Appx1108 (Fig. 136); Appx1109 (Fig. 137); Appx1158-1159 (¶¶ 635-636).

### 3. Kreft Discloses Confirming User Updates to a Building's Location on a Map

Kreft teaches another mapping system where users can update the location of points of interests ("POIs"), including businesses, landmarks, or a home. Appx1194-1195 (8:65-9:2); Appx1200 (19:22-26). Kreft uses icons to mark POIs on the map, Appx1198 (15:57-63), which correspond to an address as well as geographic coordinates (i.e., latitude and longitude), Appx1198 (15:48-63).

Kreft describes methods for "updating, enhancing, organizing, and utilizing geographic maps, for locating . . . POI's." Appx1164 (Abstract). Kreft allows a user to interact with a map "to verify, correct and provide information on the POI's, including accurate geo-coordinate location information." Appx1194 (8:45-52). For example, a user can move a POI marker to a more correct map location, and confirm the marker's new location. Appx1199 (18:11-19, 18:63-66); Appx1199-1200 (18:60-19:5); Appx1203 (25:51-56, 26:7-29); Appx1186 (Fig. 16); Appx1189 (Fig. 19); Appx8. Kreft teaches that the updated location can be synchronized with a POI database, which "improve[s] accuracy and consistency"

of POI information. Appx1194 (8:24-31); Appx1203 (26:61-64); Appx1204 (27:26-40).

#### 4. A Skilled Artisan Would Have Been Motivated To Combine Kennedy, Florance, and Kreft

Nearmap's petition articulates why a person of ordinary skill in the art ("POSITA") would have been motivated to combine Kennedy, Florance, and Kreft, and would have had a reasonable expectation of success. *See* Appx78-85.

***First***, Nearmap articulated a straightforward reason to combine Kennedy with Florance—to improve the accuracy and precision of roof locations so that future searches return appropriate images—and supported this rationale with both the explicit teachings of Florance and expert testimony. Appx79-80; Appx831-832 (¶¶ 41-42); Appx1157 (¶ 618); Appx1158 (¶ 627); Appx8-9. More specifically, a POSITA would have been motivated to modify Kennedy's mapping system according to Florance:

> to enabl[e] users to easily update location information for buildings using movable markers in order to more accurately represent the locations of the buildings and, thereby, "ensure[] that [aerial images obtained by] a geographically-based search . . . encompasses only the appropriate propert[y] within the defined geographic area" of the aerial images.

Appx78-79 (citing Florance ¶ 627 (Appx1158)); Appx9. Nearmap also explained that the combination would "enable the user to position a movable marker to update location information for a building . . . to '[a] more accurate position . . . in

the center of the property or the center of the building on the property.'" Appx78-79 (citing Florance ¶ 624 (Appx1157-1158)); Appx9. Nearmap noted Florance's assertions that "geocodes derived from street addresses typically do not provide the requisite accuracy," and that the ability to "correct geocodes [is therefore] ***crucial*** to performing accurate searches for properties within a specifically defined region." Appx79 (original emphasis) (quoting Florance ¶ 618 (Appx1157)).

Nearmap also explained that combining Kennedy and Florance would "entail[] the use of known solutions to improve similar systems and methods in the same way." Appx80. In support, Nearmap's expert, Dr. David Forsyth, explained that the Kennedy-Florance combination "would have led to predictable results of enabling a user to update location information of a building by repositioning the location marker without significantly altering or hindering the functions performed by the mapping system." Appx80 (quoting Appx831 (¶ 41)).

***Second***, Nearmap explained why a POSITA would have further combined Kennedy and Florance with Kreft: "to provide users the ability to confirm or cancel updates to marker locations before location information for buildings is updated, thereby improving the accuracy of the stored location information." Appx81-82; Appx9. "A POSITA would have . . . understood . . . that users may move markers to inaccurate locations by mistake or may require multiple marker movements to refine the marker position . . . ." Appx82 (citing Florance ¶¶ 597-598, 605, 614,

618-627, 635 (Appx1156-1158)). The combination, therefore, would provide "significant benefits such as improving user convenience, reducing the risk of storing inaccurate location information, and reducing usage of processing resources." Appx82.

### B. Pictometry Disputed the Motivation To Combine and Claim Construction

In its response, Pictometry disputed whether a POSITA would have found combining Kennedy's and Florance's teachings obvious, arguing, *inter alia*, that Florance's teaching of a way to enable more accurate searching is somehow inapplicable to searches that retrieve aerial images. *See generally* Appx297-305; Appx12-13.

Pictometry also argued that Kennedy does not satisfy the claim limitations regarding providing visual access to images because it does not explicitly teach two ***separate*** image-retrieval steps. Appx285-297; Appx5. Pictometry premised this argument on a narrow construction of limitation [1.5] / [14.5], which grafts this multiple-access requirement onto the claims:

| **Claim Language** | **Pictometry's Proposed** Construction |
|---|---|
| "providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location." Appx48 (14:6-8 (claim 1)); Appx49 (15:3-5 (claim 14)). | "accessing an aerial imagery database to retrieve the one or more oblique images corresponding to location coordinates of the user-accepted final location and displaying the one or more oblique images retrieved from the aerial imagery database." Appx278-283; Appx5. |

Pictometry relied on the same argument for dependent claims 3 and 16, namely, that "Kennedy does not teach performing a second, later image retrieval step." Appx293-294; Appx11. Although Pictometry stated that "claims 3 and 16 recite additional details—using latitude and longitude coordinates," it did not argue that using latitude or longitude, or any other limitation specific to these claims, was separately non-obvious. Appx293-294; Appx11. Thus, Pictometry did not independently argue for claims 3 and 16's patentability.

### C. Nearmap Responded to Pictometry's Arguments on Motivation To Combine and Claim Construction

In reply, Nearmap argued that Pictometry's challenges to the motivation to combine lack merit. *See* Appx367-371. Nearmap noted Florance's express statement that "[o]ften, the preliminary icon position . . . is positioned apart from the actual image of the property," showing an impetus to adjust the icon position. Appx367 (quoting Florance ¶ 624 (Appx1157-1158)); Appx13. Nearmap also explained that Pictometry misapprehended the motivation as "ensur[ing] obtaining more accurate images," when in fact the petition's stated motivation was to "improve the utility of Kennedy's system by enabling users to easily update location information for buildings using movable markers in order to more accurately represent the locations of buildings," as taught by Florance. Appx367-368. Pictometry also misunderstood Florance as "limited to searches for properties within a specifically defined region such as one side of a street or a square city

block," Appx368-369, and ignored that the Board had already observed in the institution decision that any such disclosure "does not undermine Petitioner's general contention that using Florance's method (i.e., moving a marker from a preliminary position to a property's center) in Kennedy would ultimately improve accuracy in Kennedy's oblique images." Appx369 (citing Appx252). Nearmap explained that Pictometry wrongly characterized Dr. Forsyth's declaration as conclusory because—as one example—Dr. Forsyth explained how Florance and Kennedy teach similar types of systems for obtaining aerial images and provide parallel disclosures. *See* Appx370-371 (citing Appx840-844 (¶¶ 57-58)).

Regarding Pictometry's claim construction, Nearmap showed "there is nothing in the intrinsic record that requires claim element[s] [1.5] [and 14.5] to include 'accessing an aerial imagery database to retrieve the one or more oblique images." Appx356; Appx5-6. The plain language of the claims "encompasses the idea that if that visual marker already happens to be at the final location, then [the user is] not required to move it." Appx357; Appx1718; Appx5-6. Nearmap also explained that the inventors chose a broader scope for the independent claims, as evidenced by the fact that dependent claims 3 and 16 explicitly recite a database access and image retrieval step, namely, "accessing imagery ***from*** the second imagery database." Appx358;[2] Appx6. Accordingly, Pictometry's attempt to graft

[2] All emphasis herein is added unless otherwise noted.

its database access step onto independent claims 1 and 14 renders that language in claims 3 and 16 superfluous. Appx359; Appx6. Nearmap further noted that no other intrinsic evidence supports Pictometry's construction, and Pictometry could have—but did not—define pertinent portions of limitation [1.5] / [14.5] in the specification. Appx357. The prosecution history likewise contains no pertinent disavowal or lexicography that could support Pictometry's narrow construction. Appx360-361.

In any event, Nearmap argued, the Kennedy-led combination renders the claims obvious even under Pictometry's construction. Appx363-366. Particularly regarding limitation [1.5] / [14.5], a POSITA would have understood from the asserted references' teachings that:

> "after obtaining the vertical aerial image . . . and after the GPS coordinates for the geocoded address . . . are updated," the computer system that results from the combination "would use the updated coordinates to retrieve the oblique aerial image . . . from a GIS database such as 'Microsoft, Google [Earth], or any of a number of other commercially available databases,'" (Petition, 37), "and present[] the one or more oblique aerial images," (Petition, 34).

Appx363-364. Therefore, "it would have been within the knowledge of a POSITA to search the geographic database of Kennedy ***again*** using the geographic coordinates obtained according to the repositioned visual marker of Florance, and confirmed, using the teachings of Kreft." Appx364 (original emphasis, citations omitted).

### D. The Board Correctly Found the ’880 Patent Claims Unpatentable

The Board adopted Nearmap’s obviousness rationale over Pictometry’s contrary arguments. Appx5-18. The Board rebuffed Pictometry’s challenges to Nearmap’s motivation to combine, explaining first that it was not necessary for Kennedy to state explicitly that its building-location information was “often” inaccurate. Appx13. The record shows that Florance ***does*** make that explicit statement. *See* Appx367 (citing Florance ¶ 624 (Appx1157-1158)). Moreover, the law does not require a motivation to be stated explicitly in the prior art. Appx13 (citing *KSR*, 550 U.S. at 419).

The Board also rejected Pictometry’s argument that Florance’s teachings on accuracy are insufficient because Florance deals with accuracy in pre-defined search areas, not images. Appx12-13. The Board reasoned that, even if Florance were limited as Pictometry suggested, that would “not undermine [Nearmap]’s general contention that using Florance’s method (i.e., moving a marker from a preliminary position to a property’s center) would ultimately improve accuracy and exclude unwanted properties in Kennedy’s oblique images.” Appx12-13.

The Board rejected Pictometry’s narrowing construction of limitation [1.5] / [14.5], explaining that “nothing in the term’s plain language requires accessing a database” separately to provide visual access to oblique images. Appx6. Instead, the Board explained that “[t]he plain meaning of [limitation 1.5]

requires only displaying ('providing visual access') . . . images that ***have come from*** an aerial image database ('images of an aerial imagery database')." Appx6. The Board further noted that dependent claim 3 provides for the second image retrieval step Pictometry sought to add to claim 1, which supplied further reason to reject Pictometry's narrow construction. Appx6; *see also* Appx48 (13:20-21) ("***using*** said latitude and longitude coordinates ***to access imagery from*** the second imagery database"). The Board observed that applying the Board's plain-meaning construction necessarily yielded obviousness because Pictometry's non-obviousness arguments rested upon its proposed construction. Appx10.

In addition, the Board independently found that the Kennedy-Florance-Kreft combination renders the claims obvious ***even under Pictometry's proposed construction***, explaining that Nearmap's accuracy-improvement rationale "explains why one skilled in the art would have retrieved Kennedy's two images in separate steps, separated by a user's confirmation." Appx10-11 (citing Appx78-80). In the passage of Nearmap's petition the Board cited, Nearmap set out, *inter alia*, Florance's express teachings regarding (1) "encompass[ing] only the appropriate propert[y] within the defined geographic area," Appx1158 (Florance ¶ 627); (2) moving a marker to a "more accurate position . . . in the center of the . . . building on the property," Appx1157-1158 (Florance ¶ 624); and (3) how "correct geocodes are crucial to performing accurate searches for properties,"

Appx1157 (Florance ¶ 618). *See* Appx78-80. The Board reasoned that Pictometry's argument incorrectly "assumes a skilled artisan could do no more than bodily incorporate Kennedy's single image-retrieval step." Appx10-12 (citing *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016)) and *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007)).

The Board determined that dependent claims 3 and 16 too would have been obvious given that (1) Pictometry's proposed construction incorporates the image retrieval step from claims 3 and 16 into independent claims 1 and 14, and (2) as already explained, the Kennedy-Florance-Kreft combination renders claims 1 and 14 obvious under Pictometry's construction. *See* Appx11 n.6. As for the language in claims 3 and 16, "using . . . latitude and longitude coordinates" to access a database, the Board cited a passage in Nearmap's petition addressing that language. *See* Appx11 (citing Appx87-97). For example, Nearmap's petition points to Kennedy's teachings on retrieving images—including geocoded ones—from a database. Appx87-88 (citing Appx955 (5:36-59, 6:32-44)). Pictometry never argued in its response or sur-reply that the language "using . . . latitude and longitude coordinates" forms an independent basis for non-obviousness. *See* Appx293-294; Appx399-406.

Finally, the Board also rejected Pictometry's arguments that (1) the prior art does not disclose a "non-transient computer memory," *see* Appx11-12; Appx294-297, and (2) Kennedy's Figures 1 and 36 are not prior art, *see* Appx13-15; Appx305-310—arguments that Pictometry has now abandoned, *see generally* BB.

Having found that Petitioner established the unpatentability of the challenged claims under Ground 1, it determined it did not need to address Grounds 2 or 3. Appx17.

## **SUMMARY OF THE ARGUMENT**

The Court should affirm the Board's obviousness determination. The Board provided more than a "single sentence" analysis of motivation to combine. The Board credited Nearmap's arguments about the motivations of a skilled artisan and explained why it rejected Pictometry's contrary arguments—none of which Pictometry carries forward in this appeal. The APA requires no more of the Board.

Further, though Pictometry urges the Court to reject the Board's claim construction of the "providing visual access" limitations in claims 1.5 and 14.5, Pictometry never argued that these limitations are not met under the Board's construction, and substantial evidence supports the Board's factual finding that the challenged claims would have been obvious even under Pictometry's narrow construction. Thus, the Court need not reach the claim construction issue. In any event, Pictometry's construction is unsupported. The contested phrase's plain

language encompasses displaying an image already retrieved from a database and does not include a separate database access requirement, as contrasting dependent claims 3 and 16 confirm. Ultimately, nothing in the specification or prosecution history requires the separate-access requirement Pictometry seeks to read into claims 1 and 14.

Nor does the Board's obvious typographical error referencing "claims 1 and 16" rather than "claims 1 and 14" on page Appx10 establish reversible error. The Board's reasoning is clear, and the typographical error does not affect the Board's dispositive factual finding that the prior art teaches the "providing visual access" limitations of claims 1 and 14 under the Board's construction—an issue that Pictometry did not contest in the IPR and does not and cannot argue here.

Finally, the Board adequately explained its decision finding claims 3 and 16 obvious over the Kennedy-Florance-Kreft combination and substantial evidence supports this finding. Before the Board, Pictometry argued that Kennedy failed to disclose a "second, later image retrieval step." Having already found that the asserted combination renders taking such a step obvious when addressing claims 1 and 14, the Board reasonably referred to its earlier analysis. Pictometry forfeited any argument that the language "using . . . latitude and longitude coordinates" in claims 3 and 16 would have been non-obvious, and in any event all three asserted

references—Kennedy, Florance, and Kreft—undisputedly teach using latitude and longitude. The Court should affirm the Board's decision.

## ARGUMENT

### I. Standard of Review

This Court reviews the Board's decisions as "provided in the Administrative Procedure Act ('APA'), 5 U.S.C. § 706." *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 1376, 1379 (Fed. Cir. 2016). Under the APA, "the Board's actions . . . are to be set aside if 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'" *Pride Mobility Prod. Corp. v. Permobil, Inc.*, 818 F.3d 1307, 1313 (Fed. Cir. 2016). In considering whether the Board adequately explained its findings, "[t]he central inquiry is whether" the Court "can reasonably discern that the Board followed a proper path, even if that path is less than perfectly clear." *Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331, 1344 (Fed. Cir. 2023) (internal quotation marks, brackets omitted).

Obviousness is a mixed question of law and fact, with the Board's legal conclusions reviewed de novo and its factual findings, such as the scope and content of the prior art and motivation to combine, for substantial evidence. *See Monsanto Tech. LLC v. E.I. DuPont de Nemours & Co.*, 878 F.3d 1336, 1341 (Fed. Cir. 2018); *Outdry Techs. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1368 (Fed. Cir.

2017); *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1332 (Fed. Cir. 2016). Claim construction based on the intrinsic record is a question of law reviewed de novo. *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021).

## II. The Court Correctly Found That Nearmap Proved That Independent Claims 1 and 14 Would Have Been Obvious

This Court should affirm the Board's determination that claims 1 and 14 would have been obvious. Given the straightforward nature of Nearmap's obviousness case and the technology involved, the Board's decision permits this Court's review and thus satisfies the APA's requirements. Furthermore, Pictometry's strained effort to challenge the Board's construction ignores the Board's finding that the challenged claims would have been obvious even under Pictometry's narrow construction. Because substantial evidence supports that finding, this Court need not address Pictometry's construction, which the intrinsic evidence does not support in any event.

### A. The Board's Adequately Explained Its Motivation-To-Combine

The Board's motivation-to-combine finding meets the requirements of the APA. The APA requires only that the Board's rationale is sufficiently clear to enable review for substantial evidence. *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (reviewing court upholds an agency decision if the agency's "path may reasonably be discerned"); *see also Medtronic,*

70 F.4th at 1344; *Outdry Techs. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1368-69 (Fed. Cir. 2017). Pictometry's attempt to create a legal issue fails to show clear error.

The Board's decision explains which arguments it accepted and rejected, and why it found Nearmap's arguments persuasive. As an initial matter, Pictometry's statement that "the Board's motivation to combine analysis consists of a single sentence," BB 18, is demonstrably incorrect. The Board addressed the motivation to combine Kennedy and Florance in Sections III.A.1 ("Petitioner's Proposed Combination") and III.A.4 ("Rationale for Combining Kennedy and Florance") of its decision. Appx8-9; Appx12-13. Read together, the Board made its reasoning for accepting Nearmap's proposed motivation abundantly clear: Nearmap's accuracy-improvement motivation is explicit in Florance. Appx9 (citing Florance ¶ 627 (Appx1158)).

In Section III.A.1, after first summarizing Nearmap's combination, the Board neatly recapitulated Nearmap's accuracy motivation, citing to relevant portions of Nearmap's petition, as well as to paragraph 627 of Florance, where the motivation is expressly articulated. Appx9 ("Petitioner further explains that a skilled artisan would have been motivated and found it obvious to combine Kennedy and Florance . . . to more accurately represent the locations of buildings

. . . .”).[3] Thus, the Board identified both the evidence and argument on which it relied to reach its decision—especially in light of the Board's additional analysis in Section III.A.4. *See GUI Glob. Prod., Ltd. v. Samsung Elecs. Co.*, No. 2022-2156, 2024 WL 1564694, at *5-6 (Fed. Cir. Apr. 11, 2024) (Board's decision adequate under APA where it cited evidence supporting its obviousness determination); *Medtronic*, 70 F.4th at 1344 (Board decision adequate where it explained the Board relied on the strong objective evidence of non-obviousness "to resolve this close case of obviousness"); *Yeda Rsch. v. Mylan Pharms. Inc.*, 906 F.3d 1031, 1047 (Fed. Cir. 2018) (Board decision adequate where it cited two prior art references teaching the limitation at issue); *PGS Geophysical AS v. Iancu*, 891 F.3d 1354, 1365 (Fed. Cir. 2018) (Board decision adequate where it pointed to language in one reference suggesting the need to look elsewhere as support for motivation finding).

In Section III.A.4, the Board further explained its reasoning, again articulating Nearmap's accuracy rationale and citing to Florance paragraph 627. Appx12-13. The Board then explained why it concluded that Pictometry's counterarguments were unpersuasive. *Compare* Appx12-13, *with* Appx297-301. First, the Board found immaterial Pictometry's argument that "Florance deals with

---

[3] The Board cited the wrong exhibit number "Ex. 100***6*** ¶ 627" rather than "Ex. 100***5*** ¶ 627," *see* Appx9, but not even Pictometry argues that this obvious typographical error impacts the substance of this appeal. *See generally* BB.

accuracy in pre-defined geographic-search areas, not in images," Appx12-13; Appx297-300, explaining:

> even if Florance addresses accuracy in pre-defined geographic-search areas rather than images, that does not undermine Petitioner's general contention that using Florance's method (i.e., moving a marker from a preliminary position to a property's center) would ultimately improve accuracy and exclude unwanted properties in Kennedy's oblique images.

Appx13.

Second, the Board also found immaterial Pictometry's argument that Kennedy's specification does not explicitly describe location information as "often" inaccurate, *compare id.*, *with* Appx301-302, noting that the "reason to combine references need not be explicit in the prior art" under *KSR*. Appx13. Having addressed both of Pictometry's foregoing arguments—neither of which Pictometry advances on appeal—the Board concluded by again crediting Nearmap's proffered motivation: "Given Petitioner's accuracy-improvement rationale, Petitioner has articulated sufficient reasoning with rational underpinning to support its assertion that including Florance's movable markers in Kennedy's system would have been obvious to one skilled in the art." Appx13.

While succinct, the Board's reasoning is clear, particularly given the simple and straightforward nature of the combination and the reasons for it. Appx8-13; *GUI Glob.*, 2024 WL 1564694, at *4-5 (finding explanation of motivation finding adequate where the combination involved "simple application of a known

technique to address a known problem using prior-art elements according to their established functions"). After all, people have wanted maps to provide accurate location information for as long as they have made maps and, as both Florance and Kreft illustrate, there was nothing novel—let alone non-obvious—about updating map locations to be more accurate at the time of the alleged invention in 2013, whether using a basic, conventional computer interface or simply a marker on a paper map. Appx1157-1158 (¶¶ 618-627); Appx1199 (18:11-19, 18:63-66); Appx1199-1200 (18:60-19:5); Appx1203 (25:51-56, 26:7-29); Appx1186 (Fig. 16); Appx1189 (Fig. 19). Notably, Pictometry does not argue on appeal that the combination was technologically complex or unpredictable. *See generally* BB. Thus, the Board's reasoning merely applies *KSR*'s observation that, "if a technique has been used to improve one device, and a person of ordinary skill would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." 550 U.S. at 417.

Pictometry complains that the Board needed to have "expressly adopted" Nearmap's accuracy-improvement rationale, rather than "merely refer" to it. BB 26. But the Board did exactly that, finding that Nearmap's "accuracy-improvement rationale" constituted "sufficient reasoning with rational underpinning" to support Nearmap's obviousness grounds. Appx13. In any case,

the APA does not require express adoption: even if certain aspects of the Board's rationale could be deemed implicit, the Board's reasoning is still sufficiently clear under the APA. *See, e.g.*, *Elekta Ltd. v. ZAP Surgical Sys., Inc.*, 81 F.4th 1368, 1376 (Fed. Cir. 2023) (finding the Board's analysis sufficient where the Board made "an implicit finding on reasonable expectation of success by considering and addressing other, intertwined arguments, including . . . a motivation to combine"); *Merck & Cie v. Gnosis S.P.A.*, 808 F.3d 829, 836-37 (Fed. Cir. 2015).

Lastly, the cases Pictometry cites are distinguishable because, here, the Board laid out the proposed combination and motivation to combine, the express prior-art evidence in support, as well as the Board's reasoning for crediting the motivation to combine and rejecting each of Pictometry's contrary arguments. *See supra*. In contrast, in certain of Pictometry's cases, the Board improperly relied on conclusory statements made by a party's expert or the examiner. *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1362 (Fed. Cir. 2019) (conclusory statement of expert); *In re Sang Su Lee*, 277 F.3d 1338, 1345 (Fed. Cir. 2002) (conclusory statement of examiner). Similarly, in *Cutsforth, Inc. v. MotivePower, Inc.*, a non-precedential opinion, the Board offered "offer[ed] only [a] conclusory analysis." 636 F. App'x 575, 578 (Fed. Cir. 2016). Here, the Board's treatment of the arguments and the most pertinent evidence in Sections III.A.1 and III.A.4 is reasoned and supported, not conclusory. *See supra*.

Pictometry's other cited cases also address irrelevant circumstances. In *Alacritech, Inc. v. Intel Corp.*, the Board's rationale showed that it misapprehended a party's argument, 966 F.3d 1367, 1371 (Fed. Cir. 2020), but Pictometry does not contend any such misapprehension occurred here, *see generally* BB.

In another group of cases, the Board's rationale showed a gap in the obviousness case. *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017) (no explanation of "how the combination of the two references was supposed to work"); *In re Nuvasive, Inc.*, 842 F.3d 1376, 1384-85 (Fed. Cir. 2016) (no explanation of "***why*** the PHOSITA would have been motivated to modify the SVS–PR or Telamon implants, in light of Baccelli, to obtain this additional information" (original emphasis)). Again, this case involves no substantive evidentiary gap, and Pictometry's appeal instead focuses on the adequacy of the Board's explanation. *See* BB 22-27.

Lastly, in *Power Integrations, Inc. v. Lee*, the Board "erred in failing to address the district court's previous interpretation" of a claim term, 797 F.3d 1318, 1326 (Fed. Cir. 2015), but Pictometry does not allege any such failure here, *see generally* BB. The present case involves none of the circumstances constituting an APA violation in Pictometry's cited cases.

### B. Substantial Evidence Supports the Board's Findings Establishing Obviousness Even Under Pictometry's Construction

Although Pictometry devotes most of its brief to claim construction, the Board found that a POSITA would have been motivated to combine the prior art to meet the claim limitations under either party's construction. Appx10-11. Because substantial evidence supports those findings, claim construction is unnecessary.

First, there has been no dispute—here or before the Board—that the prior art satisfies Nearmap's plain-meaning construction. *See generally* BB; Appx285-203. And, as the Board found, Kennedy retrieves images "from a source of images such as [a] geophysical database." Appx955 (5:46-50); *see also* Appx10. The images can be both straight-down images or "oblique" images. Appx10; Appx949-951 (Figs. 35-37); *see also* Appx954 (3:41-47); Appx955 (6:55-67); Appx965 (25:63-65, 26:36-48). Pictometry does not challenge this finding on appeal. *See generally* BB.

Substantial evidence also supports the Board's alternative finding that the prior art satisfies Pictometry's narrow construction requiring two image retrieval steps. Appx10-11. From the outset, Nearmap explained that its Kennedy-Florance-Kreft combination encompasses two separate image database retrieval steps: ***first*** obtaining and displaying an image "using an entered address for a building" overlaid with a moveable marker; and ***second***—after the user positions the marker to update the building's location—using "[t]he ***updated*** location to

obtain oblique aerial images." Appx76-78; *see also* Appx97 ("***after*** obtaining the vertical aerial image . . . and ***after*** the GPS coordinates for the geocoded address entered by a user 107 are updated, the image retrieval system 110 would use the ***updated*** coordinates to retrieve the oblique aerial image"); Appx363; Appx829-830 (¶ 38); Appx1722 (¶ 26). Having just updated a building's location, the most logical approach is to display an oblique image based on the updated location.

The Board recognized as much, which it made clear by citing the corresponding sections of Nearmap's petition and reply; concluding that "we agree with Petitioner that its combination is sufficient even under [Pictometry's] proposed construction"; adopting Petitioner's explanation of "why one skilled in the art would have retrieved Kennedy's two images in separate steps"; agreeing that Petitioner's "proposed combination" teaches the "providing visual access limitations"; and rejecting Pictometry's argument as improperly "assum[ing] a skilled artisan could do no more than bodily incorporate Kennedy's single image-retrieval step." Appx8-11 (citing Appx77-80; Appx87-97; Appx363-365 (citing, *e.g.*, Appx1722 (¶ 26)). Given Nearmap's expert testimony and Florance's explicit teachings supporting the motivation to combine—such as using updated location information to "encompass[] only the appropriate properties"—the Board's determination is amply supported by substantial evidence. Appx1722 (¶ 26);

Appx829-831 (¶¶ 38-41); Appx1157-1158 (¶¶ 624-627); *see also* Appx827-828; Appx832-836.

Pictometry mischaracterizes the issue as whether "***Kennedy discloses*** a second image access step," BB 47, an approach the Board properly rejected. Appx11. Consistent with the Board's determination, obviousness is an "expansive and flexible" inquiry that "cannot be confined" to "the explicit content" of the prior art. *KSR*, 550 U.S. at 415, 419. "The analysis need not seek out precise teachings directed to the specific subject matter of the challenged claim, for a court can take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418.

In particular, "[t]hat the proposed ***combination*** . . . —rather than one of the individual references—discloses the disputed claim limitation[] does not defeat the Board's conclusion of obviousness." *Fleming v. Cirrus Design Corp.*, 28 F.4th 1214, 1222 (Fed. Cir. 2022) (original emphasis); *see also In re Universal Elecs., Inc.*, No. 22-1716, slip op. at 16 (Fed. Cir. Aug. 15, 2023) ("When, as here, the rejection is based upon the teachings of a combination of references, non-obviousness cannot be established by attacking the references individually." (citation, quotation marks, and brackets omitted)).

In *Fleming*, for example, no single reference "specifically taught commanding an autopilot to perform the claimed flight maneuvers . . . upon receipt

of a parachute deployment request." 28 F.4th at 1222. The prior art did, however, teach that the autopilot was capable of performing these standard maneuvers and that they preferably should be completed before deploying an emergency parachute. *Id.* Thus, this Court held that the evidence "amply supports the Board's finding that a" POSITA "would have been motivated" to combine the references in a manner that satisfied the challenged claims. *Id.*

Similarly, in *Bot M8 LLC v. Sony Interactive Entertainment LLC*, a claim required "two different CPUs" for executing two programs. 66 F.4th 1380, 1386 (Fed. Cir. 2023). Although no single reference taught two separate CPUs executing these two programs, the Board credited the petitioner's reasons why a POSITA "would have understood a benefit of combining [the references'] teachings to arrive at a process that uses two CPUs." *Id.* (citation omitted). While acknowledging that "no reference of record shows using two different CPUs" for these two programs, this Court affirmed because "it nonetheless would have been obvious to a person of ordinary skill in the art to combine the references to yield the claimed invention." *Id.* (citation, quotation marks, and brackets omitted).

Here too, it is immaterial that Kennedy (or any individual reference) does not disclose two separate image retrieval steps. Nearmap's combination, which the Board credited, would have undertaken two such steps, thus practicing the claims even under Pictometry's construction, as the Board found. Appx8-11; *see also*

Appx76-78; Appx97. As the Board recognized, Pictometry's rigid approach runs afoul of the rule that references in a combination need not be bodily incorporated. Appx10-11; *see also Facebook, Inc. v. Windy City Innovations, LLC*, 973 F.3d 1321, 1343 (Fed. Cir. 2020); *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016).

Notably, Pictometry does not provide any evidence or argument suggesting that using the updated coordinates to perform a separate retrieval of oblique aerial would have required more than a POSITA's ordinary creativity. *See* BB 46-49. Pictometry instead argues that this particular sequence "is not contemplated by the prior art," *id.* at 49, but again that is not the test for obviousness. Only an automaton combining Kennedy with Florance and Kreft would ignore the updated coordinates and display oblique images for an inaccurate, pre-update location—and a POSITA is "not an automaton." *KSR*, 550 U.S. at 421; *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373 (Fed. Cir. 2018).

Thus, when *KSR*'s flexible obviousness test is applied correctly, substantial evidence supports the Board's finding that a POSITA would have combined the references in a manner that satisfies even Pictometry's construction. The Court, therefore, should affirm the Board's obviousness determination.

### C. The Board Correctly Rejected Pictometry's Narrow Construction

Because the Board found the challenged claims obvious under both parties' constructions, claim construction is unnecessary. Nevertheless, Pictometry's narrow construction lacks support. Pictometry seeks to construe "providing visual access to one or more oblique images of an aerial imagery database corresponding to location coordinates of the final location" in [1.5] / [14.5] to mean: "accessing an aerial imagery database to retrieve the one or more oblique images corresponding to location coordinates of the user-accepted final location and displaying the one or more oblique images retrieved from the aerial imagery database." Appx5; Appx278-283; BB 33-45. The crux of the dispute is whether the claims require two separate image retrieval steps, or whether both displayed images can be retrieved in a single step and then provided separately to a user.

#### 1. The Claim Language Does Not Require Multiple Image Retrieval Steps

##### a. Limitation [1.5] / [14.5] Does Not Require Separately Accessing a Database To Retrieve an Image

The claim language merely requires "providing visual ***access to . . . images of*** [a] . . . database"; it says nothing about ***accessing a database*** or retrieving an image ***from a database***, as Pictometry contends. The claims' plain language encompasses the scenario, for example, of displaying an oblique image earlier obtained from a database. *Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023).

"[T]he words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012); *see also Sisvel*, 81 F.4th at 1236. Neither exception applies here, and Pictometry does not argue otherwise. *See generally* BB 33-46.

Further, dependent claims 3 and 16 include the narrow requirement that Pictometry seeks to import into limitation [1.5] / [14.5]: "using . . . latitude and longitude coordinates ***to access imagery from [a] . . . database***." Appx48 (14:20-21 (claim 3)); Appx49 (15:19-20 (claim 16)); *Phillips*, 415 F.3d at 1314 ("Differences among claims can also be a useful guide in understanding the meaning of particular claim terms."). The named inventors knew how to require accessing and retrieving imagery "from" a database but chose broader language for claims 1 and 14 that encompasses displaying already-retrieved images "of" a database. *Cf. Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1366 (Fed. Cir. 2018) ("If the patentee intended 'unlaunched' to mean 'not running,' it knew how to express as much."). Moreover, Pictometry's construction of claims 1 and 14 would renders the above language of dependent claims 3 and 16

superfluous—a strongly disfavored result. *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1362 (Fed. Cir. 2008) ("[T]his court strives to reach a claim construction that does not render claim language in dependent claims meaningless."). Indeed, under Pictometry's construction, the full clause above in claims 3 and 16 is already contained in either independent claims 1 and 14 (allegedly reciting database access) or dependent claims 2 and 15 (from which claims 3 and 16 depend, and which recite the use of "latitude and longitude coordinates" as the "location coordinates of said final location"). The claims thus do not permit Pictometry's proposed construction.

Lastly, Pictometry suggests narrowness of claim scope in ways that directly contradict its positions before the Board. For example, to the extent Pictometry argues that "providing visual access" by itself requires database access and image retrieval, Pictometry argued the opposite before the Board. *Compare* BB 37-45 ("A skilled artisan would have understood the term 'providing visual access' to mean 'accessing' (i.e., obtaining or retrieving) ***from the claimed aerial imagery database***."), *with* Appx396 ("This is simply not true.").[4] As another example, Pictometry suggests that limitations [1.5] and [14.5] involve using latitude and longitude coordinates to retrieve an image from a database because "the invention"

---

[4] While the standard for waiver is met, Pictometry alternatively forfeited any construction of "providing visual access," in isolation, by failing to request one. *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020).

requires such steps, *see*, *e.g.*, BB 36-37, but Pictometry argued the opposite to the Board, *see* Appx398 ("Importantly, 'providing visual access' to the oblique image(s) 'corresponding to location coordinates of the final location' in claim 1 is ***not limited*** to 'using said latitude and longitude coordinates to access imagery from the second imagery database.'").[5] To the extent Pictometry advances such positions, they are waived based on Pictometry's contradictory arguments to the Board, or at a minimum forfeited based on Pictometry's failure to seek such constructions. *See Google*, 980 F.3d at 862 ("Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (citation and quotation marks omitted)); *Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333, 1345 (Fed. Cir. 2010) (finding waiver of claim construction argument). The claim language does not support Pictometry's construction.

**b. Pictometry's Ordinality Argument Is Immaterial**

Pictometry attempts to justify its narrow construction by arguing that the independent claim limitations are "ordinal," i.e., they must "be performed in a specific order." BB 34-37. However, the Court need not resolve whether claims 1

---

[5] Dependent claims 2 and 15 further show that limitations [1.5] and [14.5] do not require the use of latitude and longitude because they narrow the claimed "location coordinates" to "latitude and longitude coordinates." Appx48 (14:9-11); Appx49 (15:7-10).

and 14 require a specific order because it would not change the correct construction of limitation [1.5] / [14.5] and Pictometry has not preserved any independent argument for patentability based on ordinality.[6] Even assuming, *arguendo*, that step [1.5] must be performed after the preceding steps, it would not affect the Board's correct conclusion that step [1.5] does not require independent image ***retrieval*** from a database. Appx5-6. After all, step [1.5]'s plain language requires only "providing visual access" to oblique images that are "***of*** an aerial imagery database" based on the final location's coordinates. Appx48. That language does not impose any limitation on ***when*** the oblique image was retrieved from the database. Rather, it plainly would still encompass a scenario where the oblique images are obtained from the database at some earlier time—perhaps in bulk—and then access to them is "provided" after the final location is determined by the earlier steps of claim 1 (or 14).

Thus, Pictometry's ordinality argument neither buttresses its incorrect construction of limitation [1.5] / [14.5] nor provides any other basis for upholding the claims over the prior art.

[6] The order of steps in the Kennedy-Florance-Kreft combination as articulated by Nearmap and the Board is the same as in the claims. *Compare* Appx48 (cl. 1), *with* Appx76-78; Appx97; Appx363; Appx829-830 (¶ 38).

### 2. The Specification Does Not Support Pictometry's Narrow Construction

"That claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983). Thus, "[w]here a specification does not ***require*** a limitation, that limitation should not be read from the specification into the claims." *Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987 (Fed. Cir. 1988) (original emphasis); *see also Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998) (stating it is "well-established . . . that a court may not import limitations from the written description into the claims"). That remains true even "if a patent describes only a single embodiment." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

Pictometry cites no case, and no evidence in the specification, that supports limiting claims 1 and 14 to require a second image retrieval step. *See* BB 36-40; *see supra* § I.B. Pictometry relies heavily on disclosures pertaining to Figures 4A-D, *see* BB 36-37, but the '880 patent explicitly states that those figures show "optional" "example[s]," *see* Appx42 (1:66-2:7); Appx46 (9:50-54); Appx46 (10:47-57), which do not limit the claims. *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1322 (Fed. Cir. 2012). Finally, Pictometry's arguments (at 38) equating "visually depicting" with "displaying" (neither of which appears in the claim language) are far too attenuated to justify departing from the plain language

of the claims. *See Thorner*, 669 F.3d at 1365. In sum, the specification does not disclaim or narrowly define the otherwise clear claim language.

#### 3. The Prosecution History Does Not Support Pictometry's Narrow Construction

Pictometry's prosecution history arguments are similarly too attenuated to impact the correct construction of limitation [1.5] / [14.5]. BB 42-43. This Court's "precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003).

Nothing in the prosecution of the '222 patent (the '880 patent's parent) imposes a requirement of a second image-retrieval step. Rather, the named inventors amended the claims to recite "providing visual access to one or more images of an aerial database corresponding to location coordinates of the final location," Appx2517, and then distinguished those claims from the asserted Pershing reference ***based on that language***, *see* Appx2522-2526 ("Pershing fails to provide access to one or more images of an aerial imagery database corresponding to location coordinates of the final location."). At no point did the named inventors seek, for example, to distinguish Pershing based on ***when*** images were retrieved from the database or whether it was done in multiple separate operations. *See id*. Thus, this prosecution history provides no support for Pictometry's attempt

now to read those limitations into the claims, let alone the type of clear and unmistakable statement this Court's precedent requires.

#### 4. The Board Properly Found the Claims Unpatentable Under the Correct Construction

Pictometry's non-obviousness arguments before the Board all rested upon its proposed construction. Appx10. Likewise, on appeal, Pictometry does not challenge the Board's obviousness finding under the proper construction. *See generally* BB. As discussed above, substantial evidence supports the Board's finding that the prior art satisfies Nearmap's plain-meaning construction. *See* Section II.B, *supra*; Appx10; Appx949-951 (Figs. 35-37); Appx954 (3:41-47); Appx955 (5:46-50, 6:55-67); Appx965 (25:63-65, 26:36-48). Accordingly, if the Court reaches the claim construction issue, it should affirm both the construction and the Board's finding that the challenged claims would have been obvious.

### D. The Board's Typographical Error in Referring to Claim 16 Rather Than 14 in One Instance Is Not Reversible Error

Despite Pictometry's attempt to cast the Board's obvious typographical error in referring to "claims 1 and 16" rather than "claims 1 and 14," *see* Appx10, as a "critical, substantive inconsistency," *see* BB 27-33, 53-56, this minor, clerical error provides no basis to set the Board's decision aside.

That the Board's error is typographical, not substantive, is clear from context. The section of the final written decision in which this typo appears

(III.A.2) plainly addresses the two visual access steps in claims 1 and 14. Appx9. The section begins by setting up the relevant analysis, explaining that "[i]ndependent claims 1 and 14 require" two visual access steps, which the Board quotes, including "providing visual access to one or more oblique images" in limitations [1.5] and [14.5]. Appx9-10. The Board then summarizes Petitioner's and Patent Owner's arguments about those two limitations. Appx10 (first citing Pet. 26 (Appx86) and 34 (Appx94); and then citing Patent Owner Resp. 13 (Appx287) and 15-20 (Appx289-294)).

Upon rejecting Pictometry's claim construction arguments for limitations [1.5] and [14.5], the Board then rejected Pictometry's patentability arguments. Appx10. The Board referenced its earlier claim construction analysis, mistakenly stating that it applied to "claims 1 ***and 16***" rather than claims 1 and 14:

> We disagree with Patent Owner's argument for two reasons. First, Patent Owner's argument relies on its construction of "providing visual access to one or more oblique images." We decline to adopt that construction ***for the reasons outlined above in Section II.B***. ***In short***, although claims 1 ***and 16*** recite two separate "providing visual access" steps, they do not recite any database-access steps.

Appx10. The context of the Board's errant reference to claim 16 is thus providing a summary ("in short") of what it already said in "Section II.B." *Id.* Section II.B. does not even mention claim 16, which neither party proposed construing. Appx5-6. Indeed, the only mention of claim 16 anywhere in the Board's decision before this typographical error is in its table listing the challenged claims. Appx1-10.

Instead, Section II.B addresses only the claim construction dispute over claims 1 and 14—each of which recites the same two "providing visual access" limitations. *Id.*; *see also* Appx48 (13:59-63, 14:6-8, 14:56-60); Appx49 (15:3-5). Given this context, there is no reasonable reading of the Board's decision as intentionally referring to "the reasons outlined above in Section II.B" for the Board's interpretation of "claims 1 ***and 16***." Rather, the Board's reference to "claims 1 and 16" in this passage of the opinion unambiguously should have read "claims 1 and 14." *Compare* Appx10, *with* Appx5-6.

Pictometry's reading of the Board's error as a "critical, substantive inconsistency," is implausible. *See, e.g.*, BB 27. Claim 16 does not mention "providing visual access" even once, let alone twice, so it beggars belief to suggest that the Board might have truly meant to say claim 16 "recite[s] two separate 'providing visual access' steps." *Compare* Appx10, *with* Appx48 (cl. 16).

Further, the Board's substantive reasoning concerning claim 16 is entirely clear. Specifically, the Board found that Nearmap's "asserted combination and rationale" satisfies claim 16's additional requirement of "using . . . latitude and longitude coordinates to access imagery from the second imagery database" because they "adequately account for a second image retrieval step." Appx11 n.6. The Board's substantive reasoning concerning claim 16 is also fully consistent with its discussion of claim 3 (which has the same language as claim 16) in

connection with claim construction. Appx5-6. There, the Board noted that claim 3 "recites the database-access step [Pictometry] seeks to add to claim 1, which does not have that language," *id.*, which comports with the Board's finding that the prior art renders that additional step obvious. *See* Appx10-11 & n.6. There is no error beyond a single typo, and certainly no reversible error that would prevent this Court from reviewing the Board's determination that the prior art teaches the "providing visual access" limitations of claims 1 and 14 under the Board's construction.

Because the Board's error was unambiguously typographical, this case is unlike *Corephotonics, Ltd. v. Apple Inc.*, where the Court could not "discern if the Board's error was, in fact, merely typographical and harmless." 84 F.4th 990, 1013 (Fed. Cir. 2023). Pictometry's other cited cases likewise do not involve obvious typographical errors and are therefore inapposite. Instead, this case falls neatly within this Court's precedents affirming the Board so long as it can "reasonably discern that the Board followed a proper path." *Medtronic*, 70 F.4th at 1344 (internal quotation marks, brackets omitted); *In re Applied Materials, Inc.*, 692 F.3d 1289, 1295 (Fed. Cir. 2012).

Finally, Pictometry fails to show how the Board's typographical error is "prejudicial" under the APA. 5 U.S.C. § 706; *see also In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) ("[T]he harmless error rule applies to appeals from the

Board just as it does in cases originating from district courts.”). Not only is the typographical nature of the error readily apparent from the face of the Board’s decision, it also would not affect the Board’s dispositive factual finding that the prior art collectively teaches even the narrowest interpretation of any challenged claim advanced by Pictometry. Appx10-11. If the Court affirms that factual finding—as it should—there would be nothing for the Board to do on remand but apply this Court’s mandate and again find the claims unpatentable. Nothing in the APA requires such a redundant, futile exercise. *See, e.g., Shoes by Firebug LLC v. Stride Rite Children’s Grp.*, 962 F.3d 1362, 1369 (Fed. Cir. 2020) (finding the Board’s claim construction harmless error where its factual findings, supported by substantial evidence, nevertheless established obviousness).

## III. The Board Adequately Explained Its Decision Regarding Dependent Claims 3 and 16 and the Court Should Affirm It

Pictometry’s arguments concerning dependent claims 3 and 16 lack merit. First, as discussed above, the Board’s analysis of those claims was consistent, and the typographical error concerning “claims 1 and 16” provides no basis to disturb the Board’s decision. The Board rightly rejected Pictometry’s invitation to read a second database-access step into claims 1 and 14, but explicitly recognized it was required for, *e.g.*, claim 3. Appx6. As substantial evidence supports the Board’s finding that the prior art renders this additional step obvious in any event, the Board’s recognition of this requirement in claims 3 and 16 and finding that the

prior art satisfies it are fully consistent. Appx10-11; *see also* Argument Sec. II.B *supra*.

Second, the Board's substantive analysis is sufficient. Pictometry's only argument for the patentability of these claims before the Board was that claims 3 and 16 specify that the "aerial imagery database" of claims 1 and 14 is "a second imagery database" and "Kennedy does not teach performing a second, later image retrieval step." Appx293-294. Having properly adopted Nearmap's arguments, rejected Pictometry's, and found that this second, later image retrieval step would have been obvious in view of the asserted ***combination***, Appx10-11 (citing Appx78-80; Appx97), there was nothing more for the Board to say on the issue as to claims 3 and 16, so it reasonably referred back to its previous analysis. Appx11 n.6. The Board's path to finding claims 3 and 16 unpatentable over the combination that renders independent claims 1 and 14 unpatentable (under Pictometry's narrow construction which includes the database access step recited in claims 3 and 16) is thus reasonably discernable. *Medtronic*, 70 F.4th at 1344. "While the Board's decision could have been more detailed, [the APA does] not require perfect explanations." *Id.* (internal quotations omitted).

To the extent Pictometry now attempts to inject a new argument regarding other language in claims 3 or 16, such as "***using . . . latitude and longitude coordinates***," *see* BB 52 (original emphasis), Pictometry forfeited that argument

by failing to develop it below. *See* Appx293-294. Claims 3 and 16 depend from claims 2 and 15, respectively, both of which recite "location coordinates of said final location are translated to latitude and longitude coordinates." Appx293. Pictometry did not dispute that the combination meets these limitations. *See* Appx272-273; Appx293-294; Appx386; Appx399-406. At most, Pictometry's patent owner response's opaque reference to claims 3 and 16 reciting "additional details—using latitude and longitude coordinates—to access the oblique images as part of the 'providing visual access' steps," *id.*, is the type of "conclusory, skeletal argument" that fails to preserve an issue for appeal. *E.g.*, *In re Killian*, 45 F.4th 1373, 1386 (Fed. Cir. 2022).

In any event, the Board cited a passage in Nearmap's petition addressing the requirement of using latitude and longitude coordinates to access a database. Appx11 (citing Appx87-97). This portion of the petition points to Kennedy's teachings on retrieving images—including geocoded ones—from a database. Appx87-88 (citing Kennedy 5:36-59, 6:32-44 (Appx955)). Moreover, Nearmap showed that Kennedy, Florance, and Kreft all use latitude and longitude for building coordinates, and the record is devoid of any evidence that could support a finding that this feature is somehow missing from the combination. Appx68; Appx98-99; Appx955 (5:59-62, 6:32-45); Appx1109 (Fig. 137); Appx1191 (2:2-6,

2:56-64); Appx1203 (25:39-26:6). The Court, therefore, should reject Pictometry's belated arguments concerning this feature.

Because the Board's decision on claims 3 and 16 is adequately explained and supported by substantial evidence, it should be affirmed.

## CONCLUSION

For all these reasons, the Court should affirm the Board's decision.

Dated: July 29, 2024

Respectfully submitted,

*/s/ Lauren A. Degnan*
Lauren A. Degnan
Christopher Dryer
W. Karl Renner
Benjamin J. Christoff
FISH & RICHARDSON P.C.
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Telephone: (202) 783-5070

J. Steven Baughman
Megan F. Raymond
GROOMBRIDGE, WU, BAUGHMAN & STONE LLP
801 17th Street, N.W.
Suite 1050
Washington, DC 20024
Telephone: (202) 505-5830

Michael F. Milea
GROOMBRIDGE, WU, BAUGHMAN & STONE LLP
565 Fifth Avenue, Suite 2900
New York, NY 10017
Telephone: (332) 269-0030

***Attorneys for Appellee Nearmap US, Inc.***

## CERTIFICATE OF SERVICE AND FILING

I certify that on July 29, 2024, I electronically filed the foregoing **RESPONSE BRIEF** of Appellee Nearmap US, Inc. using the Court's CM/ECF filing system. Counsel for appellant were electronically served by and through the Court's CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).

*/s/ Lauren A. Degnan*
Lauren A. Degnan

## CERTIFICATE OF COMPLIANCE

The **RESPONSE BRIEF** of Appellee Nearmap US, Inc. is submitted in accordance with the type-volume limitation of Fed. Cir. R. 32(b). The brief contains 10,749 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2). This brief has been prepared in a proportionally spaced typeface using Microsoft® Word for Microsoft 365 in Times New Roman, 14 Point.

Dated: July 29, 2024

*/s/ Lauren A. Degnan*
Lauren A. Degnan